**MORTGAGE UNDERWRITING & REALTY CO. v. BOWLES, Price Administrator.**

No. 176.

United States Emergency Court of Appeals.

Heard at San Francisco Jan. 22, 1945.

Decided June 29, 1945.

Before MARIS, Chief Judge, and LINDLEY and LAWS, Judges.

A. A. Tiscornia, of San Francisco, Cal., for complainant.

Russell E. Barnes and Stanley A. Steindorf, Attys. of Office of Price Administration, both of San Francisco, Cal. (Richard H. Field, Gen. Counsel, Nathaniel L. Nathanson, Associate Gen. Counsel, Warren L. Sharfman, Chief, Court Review Rent Branch, and Charles P. Liff and Rose L. Robinson, all of the Office of Price Administration, all of Washington, D. C., on the brief), for respondent.

LAWS, Judge.

This case involves a complaint against an order of the Regional Administrator of the Office of Price Administration reducing the rent of complainant's apartment building in San Francisco, California. The building was not rented on March 1, 1942, the maximum rent date for the Area, nor during the two months ending on that date. Subsequent to the maximum rent date it was first rented on November 14, 1942, the agreed rental being $250 per month. Under Section 4(e) of the Regulation,[1] this became the maximum rent.

On June 11, 1943, the Area Rent Director notified complainant that it was proposed, under the provisions of Section 5 (c) (1) of the Regulation,[2] to decrease to $150 per month the maximum rent allowed to be charged. Complainant filed objections to the proposed reduction, but after consideration, the Area Rent Director issued an order declaring $150 per month to be the rent generally prevailing in the Area for comparable accommodations and establishing that as the maximum rent for complainant's accommodations. Application for review of this order was filed with the Regional Administrator, request being made for an oral hearing. The application for oral hearing was denied and upon consideration of the record, the application for review was denied. Complainant then filed a protest before the Administrator stating objections to the order reducing the rent and also challenging the validity of the Regulation. The protest was denied and then the complaint now pending before us was filed.

Throughout the proceedings before the Administrator and this Court complainant has attacked the Administrator's finding that $150 represented the rent prevailing on the maximum rent date for comparable accommodations. Complainant contends the Administrator considered buildings which were not fairly comparable to its building and failed to consider others which were. The Administrator considered evidence comparing the various properties with regard to location, condition, age, size and facilities available. He also considered the rents of the allegedly comparable accomodations which were in effect on the maximum rent date. However, the Administrator refused to consider evidence offered by complainant to the effect that on or about

---

[1] Rent Regulation for Housing. 8 FR 7322. § 4 provides in part as follows:
"Maximum Rents. Maximum rents (unless and until changed by the Administrator as provided in section 5)' shall be: * * *
"(e) First rent after effective date. For * * * (3) housing accommodations not rented at any time during the two months ending on the maximum rent date nor between that date and the effective date, the first rent for such accommodations after * * * the effective date * * *. The Administrator may order a decrease in the maximum rent as provided in section 5(c)."
[2] § 5: "Adjustments and other determinations. In the circumstances enumerated in this section, the Administrator may issue an order changing the maximum rents otherwise allowable * * *

the adjustment [of rents established under Section 4(e)] shall be on the basis of the rent which the Administrator finds was generally prevailing in the defense-rental area for comparable housing accommodations on the maximum rent date * * *.
"(c) Grounds for decrease of maximum rent. The Administrator at any time, on his own initiative or on application of the tenant, may order a decrease of the maximum rent otherwise allowable, only on the grounds that:
"(1) Rent higher than rents generally prevailing. The maximum rent for housing accommodations under paragraph * * * (e) * * * of Section 4 is higher than the rent generally prevailing in the Defense-Rental Area for comparable housing accommodations on the maximum rent date."

the maximum rent date complainant received one or more offers to rent its property for $250 per month; that the cost of the property and its current value are in excess of $30,000; that it is subject to a bank loan of $15,000; and that during the years 1933 and 1934, the depths of the Depression, the property rented for $200 per month for one year and $250 for the next; that when the property was purchased it was leased for $275 and at no time except during the Depression was it leased or offered to be leased for less than $250. This evidence is relied upon to establish two points: first, that the property on the maximum rent date was reasonably worth a rental of $250 per month, and, second, that the Administrator necessarily erred in finding other properties renting at substantially lower figures were comparable to that of complainant. The Administrator's position consistently has been that these alleged facts are immaterial to his determination of the rent prevailing for comparable accommodations, and it is clear from the record that they were not given consideration by him.

For reasons more fully stated later in this opinion, we agree with the position of the Administrator that his obligation under the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix § 901 et seq., is not to fix for individual properties a rental which will yield a reasonable return on the value of the properties. Therefore, the facts offered by complainant to establish the reduced rent as unreasonable were properly rejected in the consideration by the Administrator.

As to the second point to which complainant maintains its evidence is relevant, it will be noted that the reduction of complainant's rent was ordered pursuant to a provision of the Regulation which designates as the basis of adjustment the rent found by the Administrator to be generally prevailing in the Area for comparable housing accommodations on the maximum rent date. Seldom will two or more properties ever be found to be precisely the same in all respects. Therefore the prevailing rent for comparable accommodations can be ascertained only by consideration of innumerable differences which exist between properties, some tangible and some intangible. The Administrator's task is to select accommodations most similar to the subject property and to evaluate the differences between those properties and between them and the subject property. In making his determination he should consider, as he did in the case before us, the physical characteristics of the buildings, their age, the kind and quality of building materials used, the sizes of rooms, the condition of repair, the locations and neighborhoods, and other such factors which experienced realtors are accustomed to considering in appraising real estate. Reputation, social attractiveness, exclusiveness of clientele and prestige are other considerations which may be strongly indicative of the rental values of properties.[3] The history of the rents obtained for property and the financial investments which purchasers and lessees have been willing to make in it may also be important indications of the rent level in which a building is properly classified. If a building has historically rented at a figure substantially in excess of rents obtained for properties asserted to be comparable, this circumstance would appear to bear upon the comparative rental value of the properties. Over a long period in such a case the tenants in effect have established the properties as having different rental values. The explanation as to why the properties may have rented at such figures may be evident for ascertainable reasons, or it may not be, but the existence of such circumstances is in itself an important consideration in determining comparability. For the same reason firm offers to rent where accepted or rejected upon terms capable of definite appraisal; bank loans in the form of trusts or mortgages on the properties; and possibly sales values in the market are considerations which bear upon the comparability of properties for rental purposes. In a proceeding to determine the prevailing rentals of comparable housing accommodations, we therefore are of opinion that evidence of this character offered by complainant was relevant and if not explained or refuted well might be persuasive and that the Administrator committed error in not giving consideration to it.

Under these circumstances this case must be remanded to the Administrator with directions to consider the evidence which he rejected as immaterial. In such

---

[3] These elements have been recognized by the Administrator as pertinent to a determination of the rent prevailing for comparable accommodations. In the Matter of Madison, Inc., 2 Pike & Fischer Opin. & Dec. 3189 (1945).

consideration, we do not decide what weight should be given to the evidence. This is for determination by the Administrator after giving it consideration in connection with other evidence adduced before him.

■ Complainant claims it was injured by the refusal of the Regional Administrator to grant an oral hearing of its case. This Court will only interfere with a decision of the Administrator in the matter of granting or refusing an oral hearing where it plainly appears there has been an abuse of discretion. We find no such abuse in this case. Apparently all relevant facts in support of complainant's case may be fully submitted in written form.

It is obvious that the views we have expressed, relating as they do solely to the consideration of evidence, do not finally dispose of this case on its merits. Therefore it is necessary that we consider in this opinion other arguments made by complainant which if adopted by the Court would require a decision in its favor.

■ Complainant contends that the Regulation does not apply to its building, because Section 1 (b) (4) makes it inapplicable to structures or premises wherein more than twenty-five rooms are rented by a lessee or sublessee.[4] The point seems to be that since the building contained twenty-nine rooms, it was excluded from the Regulation. It is further argued that if that point is not sustained, the property is nevertheless excluded from the Regulation because the tenant has sublet twenty-six rooms, occupying a three-room apartment for the use of herself and her family. The first contention comes within an official interpretation of the Regulation issued by the Administrator, in which we concur, to the effect that only those rooms sublet by a tenant are to be counted in determining the number of rooms rented under the provision.[5] The second contention is complicated by the suggestion that the tenant, in order to bring the premises within the Regulation, appropriated for her own use a two-room apartment adjacent to, though not adjoining, her three-room apartment. The genuineness of the tenant's use of both apartments has been questioned, but the tenant, by an affidavit in the record, has sworn to the truth of her position and there is no evidence to rebut her statement. Accordingly we must accept the Administrator's finding that only twenty-four rooms are rented or offered for rent and that the building is therefore within the Regulation.

■ The validity of the Regulation is questioned by complainant's claim that because of the current lease on the property the effect of the Regulation and the order reducing its rent is to require complainant to let its property at a rental yielding less than a fair return on the value of the building, in violation of Section 4(d) of the Act[6] and the Federal Constitution. Along the same line complainant suggests that the Regulation is invalid unless the Administrator is required to consider evidence of its property's rental value so as to assure complainant of a fair return on the value of the property. Complainant apparently misconceives the principles which underlie the administration of rent control under the Emergency Price Control Act. The Administrator has adopted, and this Court has approved,[7] the maximum rent date method of rent control, by which rentals are rolled back and frozen at levels which landlords and tenants had worked out for themselves by free bargaining before the time when defense activities had injected into the market an abnormal factor resulting, or threatening to result, in rent increases. The Act requires that the maximum rents fixed by this method must be generally fair and equitable, but it is settled

---

4 § 1(b) "Housing to which this regulation does not apply. This regulation does not apply to the following: * * * (4) Structures in which more than 25 rooms are rented or offered for rent. Entire structures or premises wherein more than 25 rooms are rented or offered for rent by any lessee, sublessee or other tenant of such entire structure or premises: Provided, that this regulation does apply to entire structures or premises wherein 25 or less rooms are rented or offered for rent by any lessee, sublessee or other tenant of such entire structure or premises, whether or not used by the lessee, sublessee or other tenant as a hotel or rooming house * * *."

5 Official Rent Interpretation 1 (b) (4) —II, Pike and Fischer O. P. A. Service 200:933.

6 § 4(d) "Nothing in this Act shall be construed to require any person to sell any commodity or to offer any accommodations for rent."

7 Chatlos v. Brown, Em.App., 1943, 136 F.2d 490.

that they need not guarantee to individual landlords a fair return on investment or on the value of their properties.[8] Obviously, the maximum rent date method cannot be made to apply exactly to accommodations which, like complainant's, were not rented on the "freeze" date. However, to fit such accommodations into the theory of the control, the Administrator has ruled that rents for such accommodations shall be fixed at the level prevailing on the maximum rent date for comparable accommodations. In this way substantially the same treatment is afforded owners of accommodations whether rented or unrented on the maximum rent date. It is apparent therefore that insofar as return on value is concerned, complainant is in the same position as landlords whose properties were rented on the maximum rent date. Its only recourse, under the Act, is to establish the rent ceiling to be not generally fair and equitable. We therefore must reject complainant's attack on the Regulation insofar as it seeks to insist upon a fair return on the value of its building.

Complainant argues, finally, that it has been unable to accept payment of any rental since August 31, 1943, because the lessee has tendered the amount of $150 as payment in full for each month's rent and acceptance thereof would, under California law, constitute a waiver by the landlord of its right to collect the original rent in the event the Administrator's reduction was found improper. Complainant maintains the Regulation is invalid because of its failure to contain a provision protecting the landlord's right to recover the original rent under these circumstances. But complainant's right to recover the rent which it seeks is controlled by State law and the Administrator is not charged with a study of the laws of the several States to determine the effect upon individual contracting parties which may result from his control of rents or prices. If there is any defect in this regard in State laws, and as to this we make no intimation, the remedy is not by way of an administrative regulation, but rather by recourse to the State authorities.

This case will be remanded to the Administrator for further consideration of evidence along the lines set forth in the opinion.

---

[8] Wilson v. Brown, Em.App., 1943, 137 F.2d 348.