UNITED STATES v. WILMARTH.

No. 30864.

United States District Court
N. D. California, S. D.

May 12, 1953.

Sidney Feinberg and Laurance I. Dodge, San Francisco, Cal., for plaintiff.

McFarland, Laumeister & Ferdon, San Francisco, Cal., for defendant.

OLIVER J. CARTER, District Judge.

Acting under the Housing and Rent Act of 1947, as amended,[1] the United States has brought an action against Mrs. Genevieve Wilmarth. It is alleged that Mrs. Wilmarth, as the landlord of premises located at 1960 Clay Street, San Francisco, California, demanded and accepted sums in excess of the lawful rental for such premises. Demanded are an injunction, restitution in the amount of $11,275, and treble damages in the amount of $3,300.

The cause was tried to the court. The facts are as follows:

Mrs. Wilmarth purchased the described premises in August, 1947. Prior to such purchase the house was owned by the estate of Carrie Schwabacher. At that time there were outstanding upon the premises a lease and a sublease. The sublease was held by Mrs. Ruth Rehmer, who operated the premises as a boarding house. The rental then

paid by Mrs. Rehmer was $125 per month. Mrs. Rehmer, while a sublessee of the Schwabacher estate, approached Mrs. Wilmarth and attempted to persuade her to buy these premises in order to terminate the overhanging lease which existed. It was agreed between the two ladies that if Mrs. Wilmarth bought the house it would be leased to Mrs. Rehmer. Mrs. Wilmarth made it clear to Mrs. Rehmer, however, that she would not purchase the house at all unless it could be rented for a larger sum than that which Mrs. Rehmer was then paying. An increase was agreed to by Mrs. Rehmer. There is a dispute in the evidence as to the exact sum agreed upon as the new rental. Mrs. Wilmarth contends that the figure agreed upon was $400 per month, whereas Mrs. Rehmer contends that the agreement was as to a lesser sum.

Both parties carried on these negotiations upon the mistaken assumption that the premises were not subject to rent control. Mrs. Wilmarth had been advised by the San Francisco office of the Rent Director that a lease of a house of more than 25 rooms which were rented individually by the lessee was not subject to rent control. Mrs. Wilmarth undertook to make her own count of the rooms in the house, and upon the basis of such count decided that the house was not subject to control.

Mrs. Wilmarth bought the house and leased it to Mrs. Rehmer at a rental of $400 per month, which Mrs. Rehmer paid from August, 1947 until Mrs. Wilmarth sold the house in January, 1951.

The lawful maximum rental for these premises for the period of time that they were owned by Mrs. Wilmarth was $125 per month. Mrs. Wilmarth admits that she demanded and received a rental of $400 per month during that period.

It is contended that these premises were not subject to rent control because the regulations exempt premises wherein more than 25 rooms are rented by a lessee or sublessee.[2] In applying this regulation, only

1. 61 Stat. 196, 50 U.S.C.A.Appendix, § 1881 et seq.

2. 32A C.F.R. Sec. 39. "Structures subject to underlying leases. (a) This regula-

tion does not apply to: entire structure or premises wherein more than 25 rooms are rented or offered for rent by any lessee, sublessee or other tenant of such

the rooms actually rented or offered for rent, and not all of the rooms actually contained in the building, are to be counted. Mortgage Underwriting & Realty Co. v. Bowles, Em.App., 150 F.2d 411, 414. Rooms occupied by the lessee as a residential apartment are to be excluded from consideration. Popplewell v. Stevenson, 10 Cir., 185 F.2d 111, 114. Rooms used for the preparation and serving of food to all of the tenants, and which are not restricted to the use and enjoyment of any one tenant as his own, are not rented or offered for rent within the meaning of the regulations. The evidence establishes that there were never, during the period of Mrs. Wilmarth's ownership of the premises, more than 25 rooms of the sort specified in the exempting regulation rented or offered for rent. Therefore the premises were subject to control, and the maximum rent which could lawfully be demanded and accepted was $125 per month.

■ Section 205(a) of the Housing and Rent Act of 1947, 50 U.S.C.A.Appendix, § 1895, which creates the liability of a violator of the act for damages, contains the following proviso:

> "*Provided,* That the amount of such liquidated damages shall be the amount of the overcharge or overcharges if the defendant proves that the violation was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation."

The government stipulated, and the evidence clearly indicates, that the violation was not willful. It further shows that Mrs. Wilmarth, in good faith, inquired of the proper authorities as to whether the premises which she proposed to buy would be subject to rent control. Her misunderstanding and the violations which occurred as a consequence thereof were the result of the ambiguity of words. When she was told that the lease of a house to a tenant who would operate such house as a boarding house, offering for rent therein more than 25 rooms, was not subject to control, she thought she fully understood the prohibitions of the law. She sought information from the rent control authorities themselves. Her inquiry was made in good faith. Under the circumstances, her precautions were practicable.[3] Thus, damages should be limited to the amount of the overcharges. This sum is $1,100.

■ Since a violation has been proved, it is mandatory upon the court to award damages. Mattox v. United States, 9 Cir., 187 F.2d 406; United States v. Sharp, 9 Cir., 188 F.2d 311.

■ The complaint also seeks equitable relief. The evidence is uncontroverted that Mrs. Wilmarth has sold the premises in question. Nor is there any showing that she has violated or threatened to violate the Housing and Rent Act of 1947 with respect to any other realty. Hence, there is nothing before the court to justify the issuance of an injunction.

■■ Restitution to the tenant under the provisions of this Act is an equitable remedy, and the decision as to whether or not to grant such remedy is a matter resting within the sound discretion of the trial court. Porter v. Warner Holding Co., 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed 1332. It is true that the exercise of this power of the court is primarily directed toward enforcement of the Act and the vindication of public wrongs, rather than toward the redress of private wrongs. But, this does not foreclose the court, in the exercise of its discretion, from considering the relative equities of the parties.

Initially, it should be re-emphasized that this is not a willful violation. Mrs. Wil-

---

entire structure or premises, except as provided in paragraph (c) of this section.

"(b) This regulation does not apply to entire structures or premises where 25 or less rooms are rented or offered for rent by any lessee, sublessee, or other tenant of such entire structures or premises: *Provided,* That all of the housing accommodations in such structures or premises are exempt or decontrolled under the provisions of sections 36 to 58 p. 178 and are not subject to the provisions of Rent Regulation 2—Rooms in Rooming Houses and Other Establishments. * * *"

3. Cf. Benintendi v. Phlevis Realty Corp., D.C.N.J., 73 F.Supp. 320.

marth acted in good faith. She entered into the transaction which resulted in the violation upon the belief that the rent charged Mrs. Rehmer was lawful. Indeed, Mrs. Wilmarth would not have bought this house at all if she had not believed that she could lawfully rent it for $400 per month. She was induced to buy the house by Mrs. Rehmer. Mrs. Rehmer willingly acquiesced in the rental of $400 per month for a long period before complaining to rent control authorities. Should the court now order that Mrs. Wilmarth make restitution to Mrs. Rehmer, the result would be a judicially-sanctioned unjust enrichment. It would further allow Mrs. Rehmer to profit from a transaction in which, if there is culpability, it is equally as much hers as it is that of Mrs. Wilmarth.

Restitution in this case, as an example to the public, would provide no more of an inducement to obedience of the Act than it would an inducement to scheming tenants to profit by leading unwary landlords into traps. Nor has Mrs. Wilmarth committed a public wrong which requires vindication. Her violation was of a statute regulating economic activity. No criminal intent is required to violate such statute. Were the contrary true, she would not be in violation. Mrs. Wilmarth did not knowingly violate the statute. The violation was technical and resulted from a misunderstanding.

As pointed out by the Supreme Court of the United States in Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754, a court, in administering equitable remedies under price control statutes, is exercising all of the historical powers of equity. The court there said, 321 U.S. at pages 329–330, 64 S.Ct. at page 592:

> "* * * The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims. * * *"

This is a case where the court feels that equity is done by withholding, rather than granting, restitution. The court is not unmindful of the holding in Woods v. McCord, 9 Cir., 175 F.2d 919, that it is, in some cases, an abuse of discretion to deny restitution of rent overcharges. However, the facts of this case are readily distinguishable from those of the McCord case, supra. The Court of Appeals there failed to set out a test for the proper exercise of the trial court's discretion in such cases. Apparently, the Court of Appeals there felt that there had been an abuse of discretion because the trial court had based its denial of restitution upon the doctrine of laches. Denial is here based upon the equitable doctrines of "unjust enrichment" and "unclean hands." The distinction is one of substance when the consideration is whether or not a tenant should receive money from his landlord. Accordingly, restitution will be denied in this case.

Judgment is awarded to the plaintiff for damages in the sum of $1,100, and judgment is awarded to the defendant on the issues of injunction and restitution.

Counsel for the government is directed to prepare findings of fact, conclusions of law and judgment in accordance herewith.