### WOODS v. McCORD et al.
### No. 12039.

United States Court of Appeals
Ninth Circuit.

June 22, 1949.

Ed Dupree, General Counsel, Hugo V. Prucha, Asst. Gen. Counsel, Benjamin I. Shulman, Sp. Lit. Attorney, Office of Housing Expediter, Washington, D. C., for appellant.

Desser, Rau, Christensen & Hoffman, Jack J. Landé, Los Angeles, Cal., for appellee.

Before STEPHENS, BONE and ORR, Circuit Judges.

BONE, Circuit Judge.

This action was instituted by appellant Woods, as Housing Expediter, against appellees John McCord and Florence McCord under Section 205(a) and (e) of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 901 et seq., and the applicable rent regulations issued by the Administrator (now Expediter) pursuant to Section 2 of that Act, to recover statutory damages for excessive rents or an order of restitution of the alleged excessive rents in the amount of $5,530.72. From an adverse judgment in the lower court, the Housing Expediter appeals.

Appellees were lessees and landlords of the Belmont Apartment Hotel located in Los Angeles, California, during the period of Federal rent regulation until April 1, 1946. Subsequent to September 1, 1943, active control was in the hands of a manager who lived on the premises. The gravamen of the charge against appellees is that they obtained rents computed on a hotel or transient basis for housing accommodations which could legally only be rented by the month. The difference between the two amounts is the sum of the alleged overcharges.

Maximum legal rents for particular accommodations depend upon the rents actually being charged on the "freeze" or maximum rent date.[1] The Belmont Apartment Hotel comprised a total of 85 rental units, 79 of which contained bath and kitchen facilities. For each of the units there was a daily and weekly (transient or hotel) rate, and a monthly lesser rate. On the freeze date, March 1, 1942, some of the units were being rented upon the transient basis but the rental units herein involved were being rented upon a monthly basis and were so rented during the period of the alleged overcharges.

On or about December 15, 1942, appellees undertook to file a registration statement of their rental practices. They state that upon applying for a registration form at the Office of Price Administration in Los Angeles, they informed the clerk that they had an "Apartment Hotel" and performed hotel services such as maid and telephone services and preferred to rent transiently. The clerk then gave them the Hotel and Rooming House form which they filled out and returned. They then charged the higher transient rate even though, as later admitted in a subsequent registration, the rent actually being charged on the freeze date for the units here involved was on the lower monthly basis.[2]

In July of 1944, appellees decided to rent the apartment then occupied by the manager and by letter sought from the Office of Price Administration permission to rent such apartment on a transient basis. Following the receipt of this request, appellant's predecessor office began lengthy and unsuccessful efforts to elicit information from appellees concerning their rental practices during the base period, i. e., maximum rent date, in order to determine the propriety of their registration. The exchange of letters between the Office of Price Administration and appellee began in October, 1944. Some of the Government requests for information went unanswered and the

---

[1] See § 1388.281 and § 1388.284(a) of Maximum Rent Regulation 53, (Vol. 7, No. 210 Fed.Reg. at p. 8596, Oct. 24, 1942); §§ 1.3 and 4(a) of Rent Regulation for Housing, 10 Fed.Reg. 13528; and § 825.4 of Controlled Housing Rent Regulation, 12 Fed.Reg. 4331.

[2] At that time, all housing accommodations in the Los Angeles Defense Rental Area were subject to Maximum Rent Regulations 53 under § 1388.281 (a) supra, unless specifically exempted by subsection (b) of that section. By subsection (b), rooms within hotels or rooming houses were exempted, provided that express consent of the Administrator was obtained. Hotels were defined in terms of "rooms used predominately for transient occupancy." § 1388.293(a) (11).

others were answered unsatisfactorily with much of the information incomplete.[3] A subpoena duces tecum was finally issued to obtain appellees' records, and in August, 1945 the Area Rent Director issued a formal order denying appellees' request for hotel registration of the Belmont.

Although no review of this order was ever undertaken, appellees refused to comply therewith until an injunction suit was brought in the State court to compel proper re-registration. Pursuant to this action, appellees filed in February, 1946 a re-registration of the premises which stated that the rental units here involved were being rented on the freeze date on a monthly basis. Appellees sold their said lease on April 1, 1946.

In the answer to the Government's pretrial request for admissions, appellees admitted that as to all apartments listed in the complaint excepting Nos. 210, 304, 407, 510 and 511, the amounts alleged in the Government complaint as maximum monthly rent, rents charged, amounts of overcharges, periods of time during which overcharges were made, etc. were correct. As to the excepted rental units, appellees alleged that any overcharges had been settled out of court. In view of these admissions and the fact that appellees admitted that the rental being received for the apartments on the freeze date was on a monthly basis, it is extremely difficult to understand the basis of the finding of the trial court that there were no overcharges. We agree with Government counsel that the overcharges were admitted and that appellees relied upon other defenses.

Section 205(e) of the Act permits the person who has been overcharged to bring an action for treble damages within one year of the date of the overcharge, and if the action has not been commenced within 30 days or if the person overcharged is unable for any reason to bring the action, the Administrator (Expediter) may do so within the one year period.

The one year limitation does not apply to Sections 205(a) which permits suit by the Administrator for an injunction, restraining order, or order enforcing compliance with the Act. Porter v. Warner Holding Co., 1946, 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332. The Court there held that this section permitted an order restoring to the tenant the amount that he was illegally overcharged. This was on the basis of either (1) an equitable adjunct to an injunction, i. e., under the inherent equity powers of the court, or (2) appropriate to enforce compliance with the Act. It is the view of the Supreme Court and our own that nothing is more clearly a part of equity than "the recovery of that which has been illegally acquired and which has given rise to the necessity for injunctive relief."[4] Such is the very essence of justice.

We are not concerned with the portion of the complaint asking treble damages under Section 205(e) as it was dismissed as not being brought within the one year period, and there is no appeal from the dismissal.[5]

The trial court apparently felt that although the one year period did not apply to actions for restitution, and the doctrine of laches did not for obvious reasons apply to Government agencies in their efforts to enforce Congressional policy, nonetheless (since restitution was primarily for the benefit of the tenants) the doctrine of laches was apposite, and that since the normal period of laches, as an equitable concept,

---

[3] Appellees complain that the delays in answering the requests for information were unavoidable since they did not reside at the Belmont but in nearby towns and the O.P.A. was at fault in sending the communications to the Belmont. However it would seem that the latter would be the most proper address for such communications. They directly concerned the Belmont rental units and were of the type with which a manager would be most immediately concerned. Appellees do not explain the occasions when they completely failed to reply.

[4] Porter v. Warner Holding Co., supra, 328 U.S. at pages 399, 400, 66 S.Ct. at page 1089, 90 L.Ed. 1332; Woods v. Richman, 9 Cir., 174 F.2d 614.

[5] We do not pass upon the propriety of the dismissal but it would appear from the evidence that the delay in commencing the action was due to the fault of the appellees and thus there may have been a still subsisting cause for treble damages.

was co-existent with cognate statutes of limitations, a one year equitable limitation should be applied to actions for restitution. With this we do not agree. It is merely an indirect application of that which cannot be done directly.

Further, the action to compel restitution is not solely for the redress of private wrongs; it is primarily concerned with the vindication of public rights. "That to require restitution of overcharges tends to enforce the law prohibiting them no one would deny. That it operates to confer a benefit on the tenant, who has not seen fit to act in her own behalf, does not detract at all from the enforcement effect nor alter its nature." [6] "To deny the [Expediter] power to act in cases where, as here, restitution rather than a prohibitory injunction is the only practical remedy, would be to subvert the purposes of the Act." [7] Congress realized that enforcement of the Act would seriously suffer unless the Administrator was authorized to bring such actions. The amounts overcharged the individual tenants would often be too small for such tenants to chance the expense of litigation. This would especially be true of persons in the lower economic brackets who were the most likely to be imposed upon. The discretion under § 205(a) must be exercised in light of the larger objectives of the Act. The standard of public interest is the primary measure of the propriety and need for injunctive relief in these cases. Hecht Co. v. Bowles, 1944, 321 U.S. 321, 329, 64 S.Ct. 587, 88 L.Ed. 754.

Appellees here specifically admitted in their registration of February, 1946 that the rental units under consideration were being rented upon a monthly basis upon the freeze date. This was an admission of basic fact and is hardly (as argued by appellees) the following of the path of least resistance in an effort faithfully to comply with the applicable law and regulations.

Scrutiny of the numerous unanswered requests by the Office of Price Administration for information, from appellees, the necessity to subpoena appellees' records in order to obtain that information, plus the necessity of the suit in the State court indicated absence of an honest effort to cooperate. The extended continuation of communications does not indicate merely "an ordinary matter of business" as claimed by appellees. They were charging rentals at the lesser monthly rate on the freeze date. Subsequently, as shown by the re-registration and admissions, this rent was increased by computing it upon a weekly (transient) basis. In at least two instances (apartments 208 and 505), the weekly and monthly rates themselves were illegally raised without the subterfuge of a different computative period.

■ Further, it is not necessary that a landlord be at fault in order for it to be equitable to require him to restore that which he has illegally received.

■ In view of the facts as set out by the entire record, we hold that it was an abuse of sound discretion to refuse to order restitution.

Since there is no evidence controverting appellee Florence McCord's affidavit that the violations as to rental units Nos. 207, 210, 304, 407, 510 and 511 were settled out of court, we accept such evidence as true. Judgment as to such units is affirmed. As to the balance of the overcharges as listed in the complaint, the judgment of the lower court is reversed and the trial court is directed to order restitution in accordance with the views here expressed.

Judge STEPHENS did not participate in the decision.

---

[6] Creedon v. Randolph, 5 Cir., 1948, 165 F.2d 918, 919.

[7] Bowles v. Skaggs, 6 Cir., 1945, 151 F.2d 817, 821. See also the many authorities there cited.