ALEJANDRO MEDINA, demandante y apelante, *v.* HATO REY REALTY CO., INC., demandada y apelada.

Núm. 10370.—*Sometido:* Abril 1, 1951. *Resuelto:* Junio 8, 1951.

*Rodolfo F. Aponte,* abogado del apelante; *G. Jiménez Sicardó,* abogado de la apelada.

EL JUEZ PRESIDENTE INTERINO SEÑOR TODD, JR., emitió la opinión del tribunal.

La cuestión a resolver en este recurso es sencilla, a saber: si una corte insular, haciendo caso omiso de una orden dictada por la Oficina del Acelerador de Viviendas, bajo la Ley de Inquilinato Federal de 1947 según enmendada, fijando el alquiler máximo a una residencia, tiene facultad para desestimar una demanda sobre triple daño iniciada bajo la sección 205 de la mencionada ley, basándose en que a su juicio, dicha oficina carecía de jurisdicción para dictar la orden. Las conclusiones de hecho a que llegó el Tribunal de Distrito de San Juan, de acuerdo con la prueba presentada en el juicio, en tanto son pertinentes a la cuestión envuelta, fueron las siguientes: que el demandante Alejandro Medina arrendó de la demandada Hato Rey Realty Co., Inc. en diciembre de 1945, un local en el edificio núm. 17 de la calle Guayama de Hato Rey por un canon de $50 mensuales; que en la fianza otorgada para garantizar el pago de los cánones de arrendamiento el demandante hizo constar que el local sería usado para laboratorio fotográfico;[1] que el local consistía de un solo salón y una habitación con servicio sanitario; que el demandante le hizo varias divisiones al salón, dedicando una parte a laboratorio fotográfico y la otra a vivienda;[2] que en marzo 11, 1948 la demandada le escribió al demandante solicitando desocupara el local porque necesitaban hacerle algunas reparaciones; que en marzo 15, 1948 el demandante

[1] Del documento aparece que esto no se hizo constar en el cuerpo de la fianza sino al margen después de la firma del fiador.

[2] La prueba demostró, aun cuando el tribunal no hizo conclusión al efecto, que el Presidente y Manager de la demandada, Sr. Francisco Grovas, tenía conocimiento de que el demandante había dedicado parte del local como vivienda de su familia.

solicitó de la Administración de Inquilinato Insular una rebaja del canon de arrendamiento por ser el mismo excesivo e irrazonable, haciendo constar que el local era comercial; que practicada una investigación dicha agencia encontró que el local estaba siendo usado para fines comerciales y de vivienda y como para dicha fecha esa oficina no intervenía con locales dedicados a vivienda, dieron traslado del caso a la Oficina Federal del Acelerador de Viviendas en Puerto Rico y esta agencia, después de practicar también una investigación, llegó a la conclusión de que no había separabilidad entre el uso comercial y el de vivienda existente en el local arrendado y que predominando el de vivienda, procedía rebajar el canon a $30 mensuales ([3]) y al efecto, el día 10 de mayo de 1948 notificó a las partes que había rebajado dicho canon de $50 a $30 mensuales, efectivo desde julio 1ro. de 1947; ([4]) que la demandada siempre se negó a inscribir el local ocupado por el demandante en la Oficina del Acelerador de Viviendas por entender que nunca lo había arrendado

---

([3]) Con motivo de esta decisión la Oficina Insular de Inquilinato dió por cerrado el caso en cuanto a la solicitud dirigida a ella por el demandante.

([4]) La orden dictada dice así:

"El Director de Inquilinato, luego de considerar toda la evidencia presentada en este caso, ha llegado a la conclusión de que la Renta Máxima para la vivienda arriba descrita debe ser rebajada por los motivos contenidos en la sección 5–c–1 del Reglamento de Inquilinato, y además, por la razón hallada en la sección 4–c del Reglamento de Inquilinato, la Renta Máxima así rebajada y fijada por esta Orden será efectiva a partir del 1ro. de julio de 1947.

"Por consiguiente, se ordena que la Renta Máxima para la vivienda arriba descrita sea, y por la presente es, rebajada de $50 mensuales a $30 mensuales, a partir del 1ro. de julio de 1947. No se exigirá ni cobrará renta alguna en exceso de $30 (renta máxima fijada por esta Orden).

"Cualquier renta cobrada desde la fecha de efectividad de esta Orden en exceso de la cantidad fijada por la misma será devuelta al inquilino dentro de 30 días desde la fecha en que se expida esta Orden, a menos que el reembolso quede suspendido a tenor con las disposiciones de la sección 1300.209 o la 1300.217 del Reglamento de Procedimiento Revisado núm. 3.

"Esta Orden está ya en vigor y permanecerá en vigor hasta que se modifique por la Oficina de Control de Inquilinato."

para fines de vivienda; que si bien el demandante utilizó el local, arrendado para fines comerciales, además para vivienda suya y de su familia, lo hizo por su propia cuenta y sin el consentimiento de la demandada.([5])

De acuerdo con estos hechos el tribunal a quo llegó a la conclusión de derecho de que, habiendo la demandada arrendado el local para fines comerciales, ni la sección 204(*b*) de la Ley Federal de Inquilinato de 1947, según enmendada, que prohibe solicitar, aceptar o recibir rentas en exceso de la renta máxima legal por el uso u ocupación de "any controlled housing accommodations", ([6]) ni los reglamentos promulgados por el Acelerador de Viviendas a virtud de dicha ley eran aplicables al presente caso y en su consecuencia que la demandada no tenía que agotar los remedios administrativos concedidos en dichos reglamentos para impugnar la orden dictada por el Acelerador de Viviendas. Resolvió además lo siguiente:

"A nuestro juicio, los remedios administrativos establecidos en los reglamentos para revisar aquellas órdenes dictadas por la Oficina del Acelerador de Viviendas deben agotarse cuando dichas órdenes se refieren a propiedades sujetas al control de la mencionada agencia federal. En otras palabras, opinamos que cuando el Acelerador de Viviendas dicta una orden sobre una propiedad *que no cae dentro de las disposiciones de la Ley Federal de Inquilinato, la persona afectada por la misma no viene obligada a agotar esos remedios administrativos porque sencillamente no está dentro de sus facultades fijar la renta máxima a una propiedad que no ha sido arrendada u ofrecida en arrendamiento para fines de vivienda.*
"

---

([5]) Véase la nota (2).

([6]) La sección 202(*b*) de dicha ley define el término "housing accommodations" en esta forma:

"El término 'facilidades de vivienda' significa cualquier edificio, estructura o parte de ésta, o terreno perteneciente a los mismos, o cualquier otra propiedad mueble o inmueble arrendada u ofrecida en arrendamiento para propósitos de vivienda (incluyendo facilidades de casas, apartamientos u hospedaje, y otras propiedades usadas con fines de vivienda) juntos con todos los privilegios, servicios, accesorios, muebles y facilidades relacionados con el uso u ocupación de tal propiedad."

"Para que la acción del demandante pueda prosperar bajo la sección 205 de 'The Housing and Rent Act of 1947, as Amended' debe probar que la demandada le cobró rentas en exceso de las que legalmente podía cobrarle, *y no podemos decir que las cobradas por la demandada son ilegales aun cuando mediara la orden del Acelerador de Viviendas rebajándolas, porque el local arrendado no estaba bajo su control, ya que el mismo no cae dentro de la definición de 'housing accommodations'.*" (Bastardillas nuestras.)

Como único error señala el apelante en este recurso el a su juicio cometido por el tribunal inferior al desestimar la demanda por los fundamentos antes expuestos. Tiene razón a nuestro juicio.

 No compete a los tribunales insulares resolver si una orden dictada por la Oficina del Acelerador de Viviendas bajo la autoridad de la Ley Federal de Inquilinato, cuando ésta era aplicable a viviendas en Puerto Rico, lo fué con o sin jurisdicción sobre un local arrendado según la contención de la demandada para fines comerciales cuando dicha agencia determinó que se estaba usando también para fines de vivienda y estos últimos predominaban. La jurisprudencia es unánime al efecto de que los procedimientos establecidos y los remedios administrativos concedidos por la Ley Federal de Inquilinato y por los reglamentos adoptados por el Acelerador de Viviendas son de carácter exclusivo y deben ser cumplidos y agotados. *Bowles* v. *Willingham*, 321 U. S. 503; *Macauley* v. *Waterman S.S. Corp.*, 327 U. S. 540; *Myers* v. *Bethlehem Corp.*, 303 U. S. 41; *Yakus* v. *United States*, 321 U. S. 414; *Bourjois, Inc.* v. *Chapman*, 301 U. S. 183; *Independent Warehouses* v. *Scheele*, 331 U. S. 70; *Gates* v. *Woods*, 169 F.2d 440 (C.C.A. 4, 1948); *Bowles* v. *Meyers*, 149 F.2d 440 (C.C.A. 4, 1945); *Abbet Holding Corporation* v. *Woods*, 167 F.2d 472 (U.S. Em. C.A., 1948); *Smith* v. *Duldner*, 175 F.2d 629 (C.A. 6, 1949); *Woods* v. *McCord*, 175 F.2d 919 (C.A. 9, 1949); *Babcock* v. *Koepke*, 175 F. 2d 923 (C.A. 9, 1949); *Koster* v. *Turchi*, 173 F.2d 605 (C. A. 3, 1949); Anotaciones en 10 A.L.R.2d 249, 284.

No hemos de detenernos a extractar los hechos y las conclusiones a que se llegó en estos casos. (⁷) En todos ellos se aplicó la conocida regla de que cuando un estatuto o reglamento provee un remedio administrativo para revisar la actuación de un funcionario público las cortes no intervendrán hasta tanto dicho remedio administrativo haya sido agotado. En el caso de autos es un hecho admitido que la demandada rehusó valerse de los remedios que le concedían los reglamentos del Acelerador de Viviendas y la Ley Federal de Inquilinato para revisar la orden dictada rebajando el canon de arrendamiento bajo la teoría de que ella nunca arrendó el local para fines de vivienda. Si se aceptara esta premisa como válida, se dejaría a merced del arrendador decir que por el hecho de haber arrendado un local para fines comerciales, si los hechos luego demuestran, a satisfacción de la agencia gubernamental con jurisdicción para determinarlo, que el local se estaba dedicando a vivienda, debe prevalecer el dicho del arrendador ante las cortes sin que éste haya impugnado en el foro administrativo o judicial correspondiente la conclusión a que llegó la agencia gubernamental. Tal contención es insostenible.

■ En la orden dictada por la Oficina del Acelerador de Viviendas en mayo 10, 1948 se le informó a la demandada que debería reembolsar al demandante las rentas cobradas en exceso de los $30 fijados en la orden "dentro de 30 días desde la fecha en que se expida esta Orden, a menos que el reembolso quede suspendido a tenor con las disposiciones de la sección 1300.209 o la 1300.217 del Reglamento de Procedimiento Revisado núm. 3", y que dicha orden "permanecerá en vigor hasta que se modifique por la Oficina de Control de Inquilinato." No habiendo la demandada cumplido con dicha orden dentro del término concedido y no habiéndose acogido al remedio administrativo señalado en la misma orden para

---

(⁷) Los casos citados por la corte inferior y por la apelada son claramente distinguibles. En ninguno de ellos estaba envuelta la cuestión planteada en el presente.

suspender sus efectos, el demandante tenía derecho a reclamar judicialmente triple daño por las rentas pagadas en exceso desde julio de 1947, fecha en que se hizo efectiva la orden de mayo 10, 1948, hasta abril de 1948, ambas inclusives, o sean diez meses a razón de $20, igual a $200, multiplicado por tres, o sea un total de $600.

*Debe revocarse la sentencia apelada y dictarse otra condenando a la demandada Hato Rey Realty Co., Inc. a pagar al demandante Alejandro Medina la suma de $600 más intereses legales desde la radicación de la demanda, con costas y $100 para honorarios de abogado.* (8)

---

(8) De acuerdo con la sección 205 de la Ley de Inquilinato Federal, la condena de honorarios de abogado es mandatoria, dejándose a la discreción judicial su fijación en una cuantía razonable.