WALDINA VÉLEZ DE BUIL, asistida de su esposo ALFREDO BUIL, demandantes y apelantes, *v.* LÓPEZ DE LA ROSA HNOS., INC., demandados y apelados.

Número 10851.

*Sometido:* 8 de mayo de 1953. *Resuelto:* 22 de julio de 1953.

252

*Francisco Vizcarrondo Morell,* abogados de los apelantes; *Celestino Iriarte* y *F. Fernández Cuyar,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del tribunal.

La Sala de San Juan del Tribunal Superior de Puerto Rico resolvió este caso a base de las alegaciones de las partes, según fué acordado. De esas alegaciones surge que el día 19 de diciembre de 1950 ambas partes otorgaron un contrato de arrendamiento en cuanto a parte de un edificio localizado en la Calle San Francisco de San Juan, con un canon convenido de $20 diarios. Posteriormente las partes convinieron en reducir el canon primeramente a $15 y luego a $12.50 diarios, a partir del mes de abril de 1951. El día 19 de julio de 1952 los demandantes-arrendatarios solicitaron del Administrador de Inquilinato, bajo nuestra Ley de Alquileres Razonables que practicase una investigación del asunto, a los efectos procedentes. El 17 de agosto de 1951 el Administrador dictó una orden en la siguiente manera:

"El Administrador determina que el alquiler máximo de este local, de acuerdo con el Artículo 5(c) (1) del Reglamento de Inquilinato para Locales Comerciales y el Artículo 16 de la Ley de Alquileres Razonables, según ha sido enmendada, es de $103 por mes. Este alquiler es efectivo desde la fecha en que el inquilino ocupó el local e incluye todos los servicios actualmente suministrados por el casero."

Posteriormente los demandantes-apelantes radicaron una demanda en la Sección de San Juan del anterior Tribunal

de Distrito de Puerto Rico, solicitando que se condenase a los demandados-apelados que pagasen a los demandantes una cantidad equivalente a la diferencia entre las totalidades de los cánones satisfechos a la demandada desde diciembre 19 de 1950, fecha en que se formalizó el contrato original de arrendamiento hasta el 23 de junio de 1951 y la suma a que ascenderían dichos cánones computados a base de lo ordenado por el Administrador, o sea, $103 mensuales, solicitando que tal diferencia fuese multiplicada por tres de conformidad con el alegado derecho a triple daño estatuído en la referida Ley de Alquileres Razonables. El tribunal a quo dictó sentencia declarando sin lugar la demanda y contra eso han apelado los demandantes ante este Tribunal.

La cuestión envuelta en este caso se refiere al alegado derecho a triple daño entre las fechas ya indicadas, por las disposiciones de la mencionada ley y bajo la orden ya transcrita del Administrador.

El primer problema ante nos es al efecto de si la orden ya transcrita del Administrador constituye o no una orden de reembolso de alquileres pagados en exceso, cuya orden constituye un requisito previo a la interposición de una acción por tres veces el importe del reembolso, como la aquí envuelta, según lo dispuesto por el artículo 8 de la Ley de Alquileres Razonables (Ley núm. 464 de 25 de abril de 1946 ((1) pág. 1237), según enmendada por la Ley núm. 421 de 14 de mayo de 1947 ((1) pág. 851) (1)

---

(1) El artículo 8 citado dispone lo siguiente:

"(a) El propietario que cobre o reciba de su inquilino una cantidad en exceso del alquiler máximo fijado por el Administrador deberá, devolver. dicho exceso a su inquilino dentro de los treinta (30) días siguientes a ser requerido para ello, por escrito, por el inquilino o por el Administrador.

"(b) En aquellos casos en que el Administrador reduzca un alquiler incluyendo reembolso al inquilino, el propietario deberá llevar a efecto el reembolso dentro de los treinta días siguientes a la fecha de la orden de reembolso.

"(c) No será necesario el reembolso dentro del período indicado en los incisos (a) y (b), si dentro de dicho plazo las partes acuerdan o en su defecto y a petición de cualquiera de las partes, el Administrador

Si una determinación de reducción de alquileres equivale o no a una orden de reembolso es cuestión a ser resuelta de acuerdo con la interpretación razonable que se le dé a la orden, de acuerdo con las circunstancias peculiares de cada caso. En el caso de autos, no se dijo en la orden, en forma expresa y literal, que el arrendador debía reembolsar retroactivamente los alquileres en exceso al inquilino. Pero no hay nada en el estatuto que exija que la orden de reembolso sea expresa y literal. En la orden ante nos se dice que el alquiler fijado "es efectivo desde la fecha en que el inquilino ocupó el local". Desde un punto de vista realista, ello implica una determinación de que el arrendador es responsable al inquilino en cuanto al exceso pagado en concepto de alquileres desde la fecha en que el inquilino ocupó el local. La efectividad del reajuste se retrotrae a tal fecha. El reajuste solamente puede adquirir efectividad concreta mediante el reembolso del exceso, esto es, la efectividad se mide por el reembolso. De no interpretarse la determinación administrativa como una orden de reembolso, la disposición al efecto de que el alquiler es efectivo desde la fecha en que el inquilino ocupó el local sería académica e inútil. No podemos presumir que tal expresión contenida en la orden tenga una mera connotación abstracta, y que fuese la intención administrativa el que la orden funcionase en un vacío, sin consecuencias reales.

---

autoriza que el reembolso se efectúe en forma de pagos parciales futuros. En aquellos casos en que el inquilino continúa en posesión del local, dichos pagos parciales podrán ser deducidos de los alquileres futuros inmediatos.

"(d) Si transcurren los treinta (30) días mencionados en los incisos (a) y (b), sin que el propietario haya efectuado el reembolso o sin que se haya efectuado el acuerdo mencionado en el inciso (c), el inquilino podrá incoar contra el propietario una acción por tres veces el importe del reembolso o por cincuenta (50) dólares, cualquiera de estas sumas que fuese la mayor, más las costas y honorarios de abogado del demandante. A los efectos del derecho a demandar por un mínimo de cincuenta (50) dólares se considerará como una sola causa de acción todos los reembolsos existentes a favor del inquilino en el momento de radicarse la demanda y no se reconocerá el derecho a demandar por un mínimo de cincuenta (50) dólares, por cada sobreprecio sujeto a reembolso."

Los casos citados por el apelante, al efecto de que, bajo determinadas circunstancias, una orden de reducción de alquileres, no equivale a una orden de reembolso, no son decisivos en cuanto al caso de autos. El ámbito y extensión de tal orden depende, en cada caso específico, de la fraseología utilizada y de las realidades envueltas en cada situación. Por ejemplo, en el caso de *Co-Efficient Foundation* v. *Woods*, 171 F.2d 691, 695, se resolvió que de la orden de reducción de alquileres allí envuelta no surgía la obligación implícita de reembolsar al inquilino. Pero se indicó que la reducción en los alquileres podía ser ocasionada por el hecho de haber ocurrido un incendio o por un cambio ocurrido en las condiciones del local, y no debido a un cobro excesivo e ilegal de alquileres. En el caso de autos obviamente la reducción fué en consecuencia del cobro excesivo de rentas.

■ Alega la parte demandada que bajo el artículo 6 de la Ley de Alquileres Razonables (Ley núm. 464 de 25 de abril de 1946) el inquilino no tiene derecho retroactivo alguno a reembolso en cuanto a lo pagado en exceso con anterioridad a la orden del Administrador. Dicho artículo dispone, en parte, lo siguiente:

"En los casos en que el Administrador ajuste el alquiler que se venía pagando antes de la fecha de vigencia de esta Ley o dicte una orden final sobre cualquier alquiler, fijando en su lugar el alquiler razonable como aquí se determina, el inquilino sólo vendrá obligado a pagar el alquiler básico o el alquiler razonable a ese efecto fijado, pero no tendrá derecho a reembolso o reclamación alguna por lo pagado en exceso del alquiler razonable con anterioridad a la fecha en que éste se fijare, salvo los casos en que por disposición expresa de esta Ley el alquiler se ajustare automáticamente a la suma prevaleciente el primero de octubre de 1942 y salvo aquellos casos en que el Administrador dicte una orden provisional aumentando o fijando el alquiler máximo hasta que el caso se resuelva en definitiva; *Disponiéndose,* que el alquiler así aumentado o fijado quedará sujeto a reembolso al inquilino en cuanto a aquella cantidad qué resultare en exceso del alquiler máximo que pudiere fijarse por la orden final."

Alega la parte demandada que éste no es un caso de excepción, esto es, que no es un caso en que por disposición expresa de la ley el alquiler se ajustó a la suma prevaleciente el primero de octubre de 1942, y que éste no es un caso en que lo reclamado por los demandantes se refiera a cantidades pagadas en exceso después de una orden provisional al efecto indicado en el artículo transcrito, alegando, por lo tanto, la parte demandada que una orden retroactiva no estaría justificada en este caso por dicho artículo 6, y sería contraria a la ley. Ya hemos indicado que la orden en cuestión debe ser interpretada como retroactiva. Ahora bien, no es necesario que consideremos si tal orden es contraria al artículo 6, o si no está justificada por tal disposición estatutaria, ya que la parte demandada está imposibilitada legalmente, y no está en condiciones jurídicas adecuadas, para impugnar colateralmente la validez retroactiva de esa orden en este procedimiento específico del caso de autos. No surge de los autos que los demandados hayan solicitado la revisión de la orden en cuestión ante la Sección de San Juan del anterior Tribunal de Distrito de Puerto Rico, hoy Sala de San Juan del Tribunal Superior de Puerto Rico. Tal corte o tribunal tenía y tiene jurisdicción exclusiva para determinar la validez de una orden o determinación del Administrador. El artículo 7 de la Ley de Alquileres Razonables dispone lo siguiente:

"Cualquier regla, reglamento, orden o determinación del Administrador será revisable por la Corte de Distrito de San Juan mediante el correspondiente recurso de revisión, que podrá establecer la parte afectada dentro de los diez (10) días siguientes a la fecha en que fuere promulgada o notificada dicha regla, reglamento, orden o determinación; *Disponiéndose, sin embargo,* que si el recurso tuviere por única finalidad la revisión de una orden o determinación aumentando o rebajando el canon de arrendamiento, tal recurso podrá establecerse en la corte de distrito del distrito en que radique la propiedad concernida, confiriéndose por la presente jurisdicción a dichas cortes para conocer de tales recursos de revisión.

"Por la presente se confiere jurisdicción exclusiva a la Corte de Distrito de San Juan para determinar la validez de cualquier regla, reglamento, orden o determinación del Adminis-. trador.

"La interposición del recurso de revisión a que se refiere este artículo no suspenderá los efectos de la regla, reglamento, orden o determinación del Administrador.

"El Tribunal Supremo de Puerto Rico, en ejercicio de su discreción, podrá revisar mediante *certiorari* las resoluciones o sentencias que dictaren las Cortes de Distrito en los recursos de revisión a que se refiere este artículo."

Al no agotar ni recurrir los demandados al remedio previsto en el transcrito artículo 7, ellos no pueden impugnar colateralmente la validez de la orden en un procedimiento independiente como el del caso de autos. La regla general del Derecho Administrativo, cuya regla adoptamos, es la que se exterioriza en los casos de *Sierra, Comisionado* v. *Llamas*, 73 D.P.R. 908, 936; *Caguas Bus Line* v. *Sierra, Comisionado*, 73 D.P.R. 743 y *Sierra, Comisionado* v. *South P. R. Sugar Co.*, 73 D.P.R. 157, confirmada en 203 F.2d 275. Aunque esos casos se refieren a decretos relativos a salarios, la regla en ellos sentada es aplicable al de autos, y coincide con lo expuesto en el artículo 7 transcrito. Por ejemplo, en *Sierra, Comisionado* v. *Llamas*, supra, se dice lo siguiente:

"Debemos señalar que si una determinación administrativa, como el decreto envuelto en este caso, afecta o es aplicable a un patrono, este último debe seguir el procedimiento establecido en la ley para obtener una revisión judicial de esa determinación administrativa. Ese remedio de revisión judicial en cuanto a la validez y en cuanto a los alcances del dictamen o del decreto administrativo es de tal forma exclusivo que de no seguirse ese procedimiento de revisión judicial el patrono debe estar impedido de atacar o de impugnar el decreto en una acción independiente entablada contra el patrono para hacer efectivo ese decreto o ese dictamen. *Yakus* v. *United States*, 321 U.S. 414, 427, 433, 434; *Lockerty* v. *Phillips*, 319 U.S. 182; *Bowles* v. *Willingham*, supra, a la página 516. Refiriéndose específicamente a órdenes de salario mínimo, en el caso de *Walling* v. *Cohen*, supra, se resuelve que los demandados no habían soli-

citado la revisión judicial de la orden fijando los salarios y que, por lo tanto, no podían cuestionar en otro procedimiento independiente la validez de dicha orden. En este último caso el administrador no notificó a los demandados que ellos estaban sujetos a la orden y ellos todavía tenían tiempo para solicitar la revisión judicial. Por lo tanto, este último caso no es directamente aplicable al de autos. Sin embargo, queda .en pie la doctrina general establecida en los casos de *Yakus* v. *United States,* supra,. y *Bowles* v. *Willingham,* supra. Véanse además los casos de *Caguas Bus Line, Inc.* v. *Sierra, Comisionado,* ante pág. 743 y *Sierra, Comisionado* v. *South Porto Rico Sugar Co.,* ante pág. 157."

Refiriéndonos a la Ley Federal de Inquilinato, dijimos lo siguiente, en *Medina* v. *Hato Rey Realty Co.,* 72 D.P.R. 638, 642, 643:

"No compete a los tribunales insulares resolver si una orden dictada por la Oficina del Acelerador de Viviendas bajo la autoridad de la Ley Federal de Inquilinato, cuando ésta era aplicable a viviendas en Puerto Rico, lo fué con o sin jurisdicción sobre un local arrendado según la contención de la demandada para fines comerciales cuando dicha agencia determinó que se estaba usando también para fines de vivienda y estos últimos predominaban. La jurisprudencia es unánime al efecto de que los procedimientos establecidos y los remedios administrativos concedidos por la Ley Federal de Inquilinato y por los reglamentos adoptados por el Acelerador de Viviendas son de carácter exclusivo y deben ser cumplidos y agotados. *Bowles* v. *Willingham,* 321 U.S. 503; *Macauley* v. *Waterman S.S. Corp.,* 327 U.S. 540; *Myers* v. *Bethlehem Corp.,* 303 U.S. 41; *Yakus* v. *United States,* 321 U.S. 414; *Bourjois, Inc.* v. *Chapman,* 301 U.S. 183; *Independent Warehouses* v. *Scheele,* 331 U.S. 70; *Gates* v. *Woods,* 169 F.2d 440 (C.C.A. 4, 1948); *Bowles* v. *Meyers,* 149 F.2d 440 (C.C.A. 4, 1945); *Abbet Holding Corporation* v. *Woods,* 167 F.2d 472 (U.S. Em. C.A. 1948); *Smith* v. *Duldner,* 175 F.2d 629 (C.A. 6, 1949); *Woods* v. *McCord,* 175 F.2d 919 (C.A. 9, 1949); *Babcock* v. *Koepke,* 175 F.2d 923 (C.A. 9, 1949); *Koster* v. *Turchi,* 173 F.2d 605 (C.A. 3, 1949); Anotaciones en 10 A.L.R.2d 249, 284.

"No hemos de detenernos a extractar los hechos y las conclusiones a que se llegó en estos casos. En todos ellos se aplicó

la conocida regla de que cuando un estatuto o reglamento provee un remedio administrativo para revisar la actuación de un funcionario público las cortes no intervendrán hasta tanto dicho remedio administrativo haya sido agotado. En el caso de autos es un hecho admitido que la demandada rehusó valerse de los remedios que le concedían los reglamentos del Acelerador de Viviendas y la Ley Federal de Inquilinato para revisar la orden dictada rebajando el canon de arrendamiento bajo la teoría de que ella nunca arrendó el local para fines de vivienda. Si se aceptara esta premisa como válida, se dejaría a merced del arrendador decir que por el hecho de haber arrendado un local para fines comerciales, si los hechos luego demuestran, a satisfacción de la agencia gubernamental con jurisdicción para determinarlo, que el local se estaba dedicando a vivienda, debe prevalecer el dicho del arrendador ante las cortes sin que éste haya impugnado en el foro administrativo o judicial correspondiente la conclusión a que llegó la agencia gubernamental. Tal contención es insostenible."

En *Woods* v. *Stone*, 333 U.S. 472, la Corte Suprema de los Estados Unidos se expresó así, en cuanto a una orden de reembolso de alquileres:

"No se ha levantado cuestión alguna, ni podía levantarse cuestión alguna en este procedimiento, en cuanto a la validez de los reglamentos relevantes y de la orden de reembolso, ya sea sobre la base de su retroactividad o sobre cualquier otra base, ya que cualquier impugnación a su validez debió haberse ventilado ante la Corte de Emergencia de Apelaciones."

En el caso reciente de *Tatewosian* v. *McLellan*, 80 A.2d 879 (1951), se resuelve que si el arrendador no ha seguido el procedimiento estatutario para solicitar la revisión de una orden de reducción de alquileres, la orden debe ser considerada como válida en una acción para recobrar lo pagado en exceso.

En virtud de lo expuesto, debe declararse con lugar la demanda en cuanto a las cantidades reclamadas en concepto de triple cantidad con respecto a los alquileres pagados en exceso, de acuerdo con la orden del Administrador, o sea, retroactivamente a la fecha en que los inquilinos empezaron

a ocupar el local.  *Por lo tanto, debe revocarse la sentencia apelada y devolverse el caso al tribunal a quo para que dicte sentencia declarando con lugar la demanda, con los demás pronunciamientos que no sean incompatibles con esta opinión.*

El Juez Asociado Sr. Pérez Pimentel no intervino.

### RESOLUCION

#### 21 de diciembre de 1953

Vistas las mociones de reconsideración y de modificación de sentencia presentadas por los demandados-apelados y considerando que las alegaciones de las partes plantean controversias sobre algunos hechos que aún no han sido resueltos, se modifica la opinión y sentencia dictadas en el caso de autos, eliminándose los pronunciamientos en cuanto a que se dicte sentencia declarando con lugar la demanda.  En virtud de todo ello debe dictarse una sentencia modificada revocando la sentencia apelada y devolviendo el caso al Tribunal Superior de Puerto Rico, Sala de San Juan, para que allí se sigan los procedimientos ulteriores no incompatibles con la referida opinión.

Lo acordó el Tribunal y firma el Sr. Juez Presidente.  El Juez Asociado Sr. Pérez Pimentel no intervino.