Don Santesson, peticionario, *v.* Tribunal Superior de Puerto Rico, Sala de San Juan, J. M. Almodóvar Acevedo, Juez, demandado; Ramón Fuentes, interventor.

Número 2272.
*Reasignado:* 28 de abril de 1961. *Sometido:* 3 de mayo de 1961.

*Ángel Viera Martínez,* abogado del peticionario; *Guillermo Pierluissi,* abogado del interventor; *Juan T. Peñagarícano, Víctor M. Marchán* y *Abraham Freyre,* abogados del Administrador de la Administración de Estabilización Económica.

El Juez Asociado Señor Blanco Lugo emitió la opinión del Tribunal.

Don Ramón Fuentes construyó una edificación en el año 1951 cuya segunda planta fue cedida en arrendamiento al peticionario Don Santesson en 14 de marzo de 1953 por un

canon mensual de doscientos cincuenta dólares. Posteriormente, en 23 de enero de 1954, las partes suscribieron un nuevo contrato de arrendamiento, pero el canon permaneció inalterado. Fuentes no cumplió hasta el 31 de julio siguiente con la disposición que requiere la inscripción de locales destinados a alquiler.[1] En 20 de septiembre de dicho año Santesson se querelló ante la Administración de Estabilización Económica en relación con el canon que estaba pagando, y dicha agencia, en la misma fecha, notificó al arrendador una orden provisional indicándole que se proponía fijar un canon máximo de ciento setenta dólares para el local arrendado.

En 17 de febrero de 1955 se celebró la audiencia correspondiente ante la Administración de Estabilización Económica, y como resultado de la misma, se dictó una orden definitiva reduciendo el canon a ciento setenta dólares, efectivo a partir del día 1 de febrero de 1955. Santesson había desocupado el local en 29 de octubre de 1954.

El peticionario solicitó la revisión de esta orden final por entender que su efectividad debió ser la de 14 de marzo de 1953, fecha en que ocupó por primera vez el local en cuestión. El Tribunal Superior, Sala de San Juan, dictó sentencia modificando la orden de fijación de alquiler a los únicos fines de hacerla retroactiva a la fecha en que se dictó la orden provisional, o sea, el día 20 de septiembre de 1954. Ordenó, además, que se le reembolsara a Santesson el canon cobrado en exceso por el período comprendido entre el 20 de

---

[1] El artículo 9 de la Ley de Alquileres Razonables, Núm. 464 de 25 de abril de 1946 (Leyes, pág. 1327), 1343, 17 L.P.R.A. sec. 189), dispone en su parte pertinente que "será obligación de todo propietario inscribir en la Oficina de Administración de Precios de Puerto Rico dentro de los treinta (30) días siguientes a la fecha de promulgación de las reglas que al efecto dicte el Administrador de acuerdo con dichas reglas, todas sus propiedades de alquiler . . ." El Reglamento de la Administración de Inquilinato fue promulgado en 1 de noviembre de 1946. El reglamento vigente en la actualidad fue promulgado en 12 de enero de 1959. En el curso de esta opinión nos referiremos al primero como el "reglamento original" y al segundo como el "reglamento vigente".

septiembre y el 29 de octubre de 1954, fecha en que éste había desocupado el inmueble arrendado.

Contra esta sentencia el inquilino interpuso recurso de certiorari. Expedimos el auto. El casero no impugnó esta determinación judicial, y en cuanto a él se refiere, la sentencia es final y definitiva.

■ La única cuestión envuelta es si a la orden final de fijación de cánones ha debido dársele efecto retroactivo a la fecha del arrendamiento original. Es preciso que establezcamos previamente que el inmueble, por ser de construcción posterior al 1 de octubre de 1942 y el 25 de julio de 1946, no tenía un "canon básico" de alquiler, y que el canon que se fijó por el Administrador es el "canon razonable" a que se refiere la ley.(²)

El artículo 6 de la Ley de Alquileres Razonables (17 L.P.R.A. sec. 186) provee que "En los casos en que el Administrador ajuste el alquiler que se venía pagando antes de la fecha de vigencia de esta Ley o dicte una orden final sobre cualquier alquiler, fijando en su lugar el alquiler razonable como aquí se determina, el inquilino sólo vendrá obligado a pagar el alquiler básico o el alquiler razonable a ese efecto fijado, pero no tendrá derecho a reembolso o reclamación alguna por lo pagado en exceso del alquiler razonable con anterioridad a la fecha en que éste se fijare, salvo los casos en que por disposición expresa de esta ley el alquiler se ajustare automáticamente a la suma prevaleciente el primero de octubre de 1942 y salvo aquellos casos en que el Administrador dicte una orden provisional aumentando o fijando el alquiler máximo hasta que el caso se resuelva en definitiva; Disponiéndose, que el alquiler así aumentado o fijado quedará sujeto a reembolso al inquilino en cuanto a aquella

---

(²) En *Mejías* v. *Tribunal Superior*, *post*, pág. 562 (1961), relacionamos los casos en que el Administrador puede fijar un canon razonable. Es suficiente recordar que la fijación de un canon razonable no procede cuando el inmueble arrendado tiene un canon básico o de congelación, salvo los casos a que se refiere dicha opinión.

560

cantidad que resultare en exceso del alquiler máximo que pudiere fijarse por la orden final." Resulta claro que la ley, en los casos en que se haya fijado un "alquiler razonable" sólo permite que se ordene el reembolso retroactivo a la fecha en que se haya dictado la orden provisional de reducción. No autoriza, por tanto, que la retroactividad sea a la fecha en que se ocupó el local por primera vez.

█ Ahora bien, el peticionario nos indica que su derecho arranca de las disposiciones del artículo 4(e) del reglamento original(3) que dice así:

"En todos los casos comprendidos en el Art. 4b, en que la fecha del arrendamiento sea posterior a la fecha de vigencia de este Reglamento, el casero vendrá obligado a inscribir el local comercial dentro de los 30 días siguientes a la fecha de dicho arrendamiento, en la forma que se dispone en el Art. 7. Si dentro del plazo fijado el casero radica su planilla de inscripción debidamente llenada y posteriormente el Administrador fija un alquiler máximo menor que el fijado por el casero la reducción tendrá carácter prospectivo. Si la planilla es radicada después del plazo indicado, la reducción del alquiler que pueda ocurrir tendrá efecto retroactivo a la fecha del primer alquiler. La devolución se efectuará dentro de los 30 días siguientes a la fecha en que el Administrador dicte la orden fijando el alquiler máximo. Si el casero prueba que no inscribió a tiempo por causas justificadas, la orden fijando el alquiler máximo podrá relevar al casero de la obligación de reembolso. Lo anteriormente dispuesto, así como los reembolsos que se efectúen en virtud de ello, no afecta en forma alguna la responsabilidad civil o criminal en que pueda haber incurrido el casero por no inscribir a tiempo en la forma que dispone el Art. 7."

Conviene aclarar que esta disposición reglamentaria prácticamente es una traducción literal del Reglamento Federal de Inquilinato emitido en virtud de la ley conocida como "Emergency Control Act" de 1942, que en cuanto a reembolso a los inquilinos por cánones cobrados en exceso no con-

(3) El reglamento vigente contiene una disposición sobre reembolso que es una copia literal de la parte pertinente del artículo 6 de la ley que transcribimos precedentemente. 17 R. & R. P. R. sec. 186-16.

tiene las limitaciones expresas que aparecen en el artículo 6 de la ley local. En tanto en cuanto las disposiciones del reglamento original son contrarios o incompatibles con las de la ley, no pueden prevalecer. *Álvarez* v. *Secretario de Hacienda*, 80 D.P.R. 16 (1957); *Pagán* v. *Tribunal de Contribuciones*, 73 D.P.R. 654 (1952); *Descartes* v. *Tribunal de Contribuciones*, 71 D.P.R. 471 (1950); *Cabassa* v. *Rivera*, 68 D.P.R. 706 (1948); *Mitchell* v. *Greinetz*, 235 F.2d 621 (Cir. 10, 1956); *Wright* v. *Bayowski*, 152 N.E.2d 441, (1957).

Es cierto que en *Peñagarícano, Admor.* v. *Tribunal Superior*, 81 D.P.R. 877 (1960) indicamos que la orden del Administrador privó a los inquilinos del derecho a un reembolso mayor cada mes de todo el exceso sobre el alquiler congelado desde la fecha en que éstos ocuparon la vivienda, pero la situación de hechos allí envuelta era distinta por tratarse de un inmueble que tenía un canon básico a 1 de octubre de 1942. No se trataba de un canon razonable fijado por el Administrador. Sin embargo, a la página 882 de dicha opinión expusimos la solución aplicable a un caso en que se trate de una propiedad que no tiene canon de congelación en los mismos términos que utilizamos ahora para disponer de este recurso. Hemos considerado las razones expuestas por el peticionario y no sólo no estamos convencidos que debamos cambiar las normas enunciadas en dicha opinión, sino que las ratificamos como la única solución correcta a la situación discutida.

El apelante descansa con gran énfasis en el caso de *Vélez* v. *López de la Rosa Hnos.*, 75 D.P.R. 251 (1953), en el cual sostuvimos una orden de reembolso del Administrador que era efectiva desde la fecha en que la inquilina ocupó el local arrendado. Una lectura de la opinión revelará que el fundamento que tuvimos para impedir al casero impugnar la orden por el fundamento de que no había acudido oportunamente mediante el procedimiento que le concedía la ley para la revisión de la orden administrativa, y que tal impugna-

ción no podía levantarse por primera vez dentro de la acción de reembolso instada por el inquilino. Por otro lado, se trataba allí de un local que había estado arrendado en octubre 1 de 1942, y tenía por tanto un "canon básico".

■ Aduce también el peticionario que debe sostenerse el artículo 4(e) del Reglamento como una penalidad impuesta por el incumplimiento de la obligación de inscribir el local arrendado. No podemos convenir con esta posición porque la ley no autoriza al Administrador para establecer penalidades y ciertamente del artículo 5(d) de la Ley (17 L.P.R.A. sec. 185(d)) no puede deducirse tal facultad. Por otro lado, cuando el legislador intentó imponer penalidades lo hizo en forma expresa. Véanse los artículos 6, 8, 12-J y 19 (17 L.P.R.A. secs. 186, 188, 202 y 210).

*Se anulará el auto expedido y se confirmará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 1 de febrero de 1956.*